# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
On Brief January 11, 2011

## STATE OF TENNESSEE v. STEPHANO L. WEILACKER

**Appeal from the Criminal Court for Montgomery County**
**No. 40700673   Michael R. Jones, Judge**

---

**No.  M2010-00497-CCA-R3-CD - Filed March 3, 2011**

---

Appellant, Stephano L. Weilacker, was indicted by the Montgomery County Grand Jury for aggravated robbery and especially aggravated kidnapping for his role in the robbery of Triangle Kwik Stop in Montgomery County, Tennessee.  At the conclusion of a jury trial, Appellant was found guilty of both offenses.  Appellant was sentenced by the trial court to ten years for aggravated robbery and twenty years for especially aggravated kidnapping, to be served concurrently.  The sentences were ordered to be served consecutively to an eleven-year sentence for aggravated robbery in another case.  Appellant filed a motion for extension of time in which to file a motion for new trial more than thirty days after the entry of the judgments.  The trial court granted the motion.  Appellant filed a motion for new trial.  After a hearing, the trial court denied the motion.  On appeal, Appellant argues that the evidence was insufficient to support the convictions; that the trial court failed to properly charge the jury with lesser included offenses; and that the trial court improperly ordered consecutive sentencing.  After a review of the record as a whole, we determine that the trial court improperly ruled on an untimely motion for new trial.  Therefore, Appellant has waived all issues on appeal with the exception of sufficiency of the evidence, sentencing, and issues that would result in the dismissal of the prosecution.  Because the evidence was sufficient to support the convictions and the trial court properly sentenced Appellant, the judgments of the trial court are affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Jordon D. Mathies, Nashville, Tennessee, for the appellant, Stephano L. Weilacker.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; John Carney, Jr., District Attorney General; and Robert Nash, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

On June 30, 2006, the Triangle Kwik Stop in rural Montgomery County was staffed by Brandi Perry. Ms. Perry observed two young men come into the store. One of them was armed with a pistol. The man pointed the gun at her, then pointed the gun at Frank Lavarre, a vendor who was stocking a display at the store. The man demanded money and cigarettes. He ordered Mr. Lavarre to lie on the floor. Ms. Perry complied with the request, handing over money and cigarettes. The man then shot Mr. Lavarre in the leg.

The men left the market and jumped into the back of a large white car. Ms. Sandra Lewis, who was shopping next door at the Food Lion, saw two young African-American men leave the market laughing and running. Ms. Lewis was alarmed by the situation, so she wrote down the license plate number of the car and called the police.

Several days later, Appellant and David Selby were arrested while riding in Appellant's white Mercury Grand Marquis. Police Officer Scott Beaubien initiated a traffic stop of Appellant's vehicle. The weapon used in the Triangle Kwik Stop robbery was found in the car. Mr. Selby's fingerprints were found on the pistol.

Appellant, Jacobi K. Allen, and David Selby were indicted by the Montgomery County Grand Jury for aggravated robbery and especially aggravated kidnapping for their involvement in the Triangle Kwik Stop robbery.

At trial, Mr. Selby testified that Appellant called him on the day of the robbery and asked him to ride around with him and to go buy some fireworks. Appellant was driving his white Mercury Grand Marquis. When Mr. Selby got into the car, he stated that there were two other younger African-American males in the back seat. As the group passed the Triangle Kwik Stop market, Appellant asked the men in the back seat if they wanted to make a little money. Appellant told them what to do and provided a pistol to the men. After the men robbed the market, the money and cigarettes were divided between Appellant and the two men.

Mr. Selby admitted that his fingerprints were found on the pistol that was used in the robbery. He explained that when police initiated the traffic stop of the vehicle, Appellant handed Mr. Selby the weapon. Mr. Selby then handed the weapon back to Appellant, who placed it under the seat.

Appellant presented the videotape from the store security camera in support of his defense. The videotape showed that the armed robbery was committed by two men other than Appellant.

At the conclusion of the proof, the jury found Appellant guilty of aggravated robbery and especially aggravated kidnapping. The trial court, at a sentencing hearing, sentenced Appellant to ten years for aggravated robbery and twenty years for especially aggravated kidnapping, to be served concurrently to each other but consecutively to the sentence in case number 40600977, a previous sentence. The trial court entered the judgments on December 16, 2009.

On February 3, 2010, Appellant filed a motion for extension of time to file a motion for new trial. In the motion, counsel for Appellant claimed that a medical condition caused him to be unable to file the motion for new trial within the specified deadline. The trial court granted the motion and a hearing was set for February. After a hearing, the motion for new trial was denied. Appellant filed a notice of appeal.

*Analysis*

As a preliminary matter, the State argues that the motion for new trial was untimely, thus depriving the trial court of jurisdiction to consider the motion. Appellant did not respond directly to this argument.[1] A motion for new trial "shall be made . . .within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(b). This provision is mandatory, and the time for filing may not be extended. *See* Tenn. R. Crim. P. 45(b); *see also State v. Martin*, 940 S.W.2d 567, 569 (Tenn. 1997); *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989). The thirty-day provision is jurisdictional, and an untimely motion is a nullity. *Dodson*, 780 S.W.2d at 780. It deprives Appellant of the opportunity to argue on appeal any issues that should have been raised in the motion for new trial. *Martin*, 940 S.W.2d at 569. Furthermore, the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal; thus, an untimely motion for new trial will also result in an untimely notice of appeal. *See State v. Davis*, 748 S.W.2d 206, 207 (Tenn. Crim. App. 1987). Unlike the untimely filing of the notice of appeal, this Court does not have the

---

[1] In his brief on appeal, Appellant does not directly address the timeliness of his motion for new trial but relies on a plain error analysis for at least one of his issues.

authority to waive the untimely filing of a motion for new trial. *See* Tenn. R. App. P. 4(a); *State v. Givhan*, 616 S.W.2d 612, 613 (Tenn. Crim. App. 1980). This Court has previously held that pursuant to Rule 3(e) "the failure to file a motion for a new trial, the late filing of a motion for a new trial, and the failure to include an issue in a motion for a new trial results in waiver of all issues which, if found to be meritorious, would result in the granting of a new trial." *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994) (footnote omitted). In other words, the untimely motion for new trial waived appellate consideration of all issues other than sufficiency of the evidence and any matters of plain error. *See* Tenn. R. App. P. 3(e), 36(b).

Here, Appellant's motion was untimely because it was filed over a month after the order of sentence was entered. However, the trial court did review the motion despite the fact that the trial court did not have jurisdiction to hear and determine the merits of the untimely motion for new trial. The trial court's "erroneous consideration [and] ruling on a motion for new trial not timely filed . . . does not validate the motion." *Martin*, 940 S.W.2d at 569 (citing *Dodson*, 780 S.W.2d at 780).

Because the untimely filing of a motion for new trial does not toll the time for filing a notice of appeal, a late filed motion for new trial will generally result in an untimely notice of appeal. *State v. Patterson*, 966 S.W.2d 435, 440 (Tenn. Crim. App. 1997); *Davis*, 748 S.W.2d at 207. In the case herein, the trial court denied the untimely motion for new trial on February 26, 2010, and Appellant filed an untimely notice of appeal on the same date.

Although at least one of Appellant's issues, the sufficiency of the evidence, need not be raised in a motion for new trial in order to secure appellate review, *see State v. Boxley*, 76 S.W.3d 381 (Tenn. Crim. App. 2001), there is no automatic appeal of this issue to this Court. Either the timely filing of a notice of appeal must occur, or a waiver of the timely filing of a notice of appeal must be obtained from this Court in order to perfect an appeal. Tenn. R. App. P. 4(a). This Court has commented:

> An attorney who fails to perfect a timely appeal from the entry of a judgment places his client's appeal in peril of dismissal. *See* T[enn]. R. A[pp]. P. 4(a). Although certain post-judgment motions may suspend the time for filing the notice of appeal, none of those motions were timely filed in this case. *See* T[enn]. R. A[pp]. P. 4(c). However, Rule 4(a) provides that the notice of appeal "is not jurisdictional and the filing of such document may be waived in the interest of justice." T[enn]. R. A[pp]. P. 4(a). "In determining whether waiver is appropriate, this Court will consider the nature of the issues presented for review, the reasons for and the length of the delay in seeking relief, and any other relevant factors presented in the particular case." *State*

v. *Markettus L. Broyld*, No. M2005-00299-CCA-R3-CO, Davidson County, slip op. at 2 (Tenn. Crim. App. Dec. 27, 2005).

*State v. Baldomero Galindo*, No. E2009-00549-CCA-R3-CD, 2010 WL 4684469, at *13 (Tenn. Crim. App., at Knoxville, Nov. 19, 2010).

Appellant herein challenges the sufficiency of the evidence, the jury instructions, and his sentences. Although the issue with respect to the jury instructions has been waived for review other than plain error, we elect to waive the timely filing of a notice of appeal. We recognize and appreciate that defense counsel may have been faced with adverse weather conditions and health problems as noted in his motion for extension of time to file a motion for new trial, but we note that counsel's motion for extension of time was filed more than fifty days after the entry of the judgment.[2] Further, counsel did not file a reply brief responding to the State's argument that the motion for new trial was untimely and, therefore, Appellant's issues were waived. We caution counsel that compliance with applicable court rules, including the Tennessee Rules of Appellate Procedure, is expected of attorneys who practice before the Court of Criminal Appeals.

### *Sufficiency of the Evidence*

Appellant contends on appeal that the evidence is insufficient to support his convictions. Specifically, he argues that the accomplice testimony of Mr. Selby was not sufficiently corroborated. The State, on the other hand, contends that the accomplice testimony was corroborated by the testimony of Ms. Lewis and Officer Beaubien as well as the discovery of the gun in Appellant's car several days after the robbery.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence. *Id.* The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App.

---

[2] This Court notes that there were at least five holidays occurring during this time period. However, even if the Court considered the holidays in the calculation of the time period, the motion would still be untimely.

P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990).

We agree with Appellant that convictions may not be based solely upon the uncorroborated testimony of accomplices. *See State v. Robinson*, 971 S.W.2d 30, 42 (Tenn. Crim. App. 1997). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate such testimony. *See State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). More specifically, precedent provides that:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must[,] of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime.

*State v. Griffis*, 964 S.W.2d 577, 588-89 (Tenn. Crim .App. 1997) (quoting *Sherrill v. State*, 321 S.W.2d 811, 815 (Tenn. 1959)). In addition, our courts have stated that:

> The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*Id.* at 589 (footnotes omitted). Furthermore, we note that the question of whether an accomplice's testimony has been sufficiently corroborated is for the jury to determine. *See id.* at 588; *State v. Maddox*, 957 S.W.2d 547, 554 (Tenn. Crim. App. 1997).

Appellant was convicted of aggravated robbery and especially aggravated kidnapping. Robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear." T.C.A. § 39-13-401(a). A robbery becomes aggravated either when the victim is seriously injured or when the defendant "display[s] . . . any article used . . . to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-402(a).

Especially aggravated kidnapping is defined as false imprisonment or "knowingly remov[ing] or confin[ing] another unlawfully so as to interfere substantially with the other's liberty," T.C.A. § 39-13-302(a), "accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." T.C.A. § 39-13-305(a)(1). "Deadly weapon" means "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury." T.C.A. § 39-11-106(a)(5).

At trial, there was no dispute that the Triangle Kwik Stop was robbed by two armed men and that Mr. Lavarre was shot in the leg while lying on the floor. Mr. Selby testified that Appellant was the organizer of the robbery. Appellant was the driver of the car, suggested the robbery to the passengers in the car, and provided the gun for the robbery. Ms. Lewis testified that she was shopping across the street from the Triangle Kwik Stop market when she saw two young African-American men run out of the store and get into a white car. She was alarmed and wrote down the license plate number, later calling the police. Officer Scott Beaubien stopped Appellant's white Mercury because it matched the description of the car and license plate number provided by Ms. Lewis. When Officer Beaubien stopped the car, Appellant was accompanied by Mr. Selby. Further, when the car was searched, a weapon was located. The weapon was later determined to be the same weapon that was used in the robbery. The jury clearly determined that the evidence introduced at trial corroborated Mr. Selby's testimony and independently connected Appellant with the crimes. This issue is without merit.

*Jury Instructions*

Next, Appellant complains that the trial court failed to properly charge the jury. Upon review of Appellant's brief, it appears that Appellant argues that the trial court failed to properly charge all lesser included offenses. Appellant argues that the trial court's error was "plain" but then contends that this issue was properly preserved in the motion for new trial.

The State argues that the issue was waived for failure to present it in a timely motion for new trial and for failure to include the jury instructions in the record on appeal.

As we discussed above, Appellant's motion for new trial was untimely, thus waiving all issues with the exception of sufficiency and sentencing herein. Further, Appellant has failed to include a copy of the jury charge in the record on appeal. It is Appellant's duty to provide a complete record on appeal. *State v. Ballard*, 855 S.W.557 (Tenn. 1993). The only way Appellant could, therefore, receive relief on this issue is if plain error were established.

We now address whether the trial court committed plain error[3] by failing to give all lesser included offense instructions. When determining whether plain error review is appropriate, the following five factors must be established:

"(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused [must not have waived] the issue for tactical reasons; and (e) consideration of the error [must be] "necessary to do substantial justice."

*State v. Terry*, 118 S.W.3d 355, 360 (Tenn. 2003) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (footnotes omitted)). Herein, because Appellant has failed to provide an adequate record for review, it is not clear what happened in the trial court. Consequently, Appellant is not entitled to plain error review.

*Sentencing*

Finally, Appellant challenges his sentence. Appellant argues that "the court committed reversible error which was not harmless in ruling that the statutory requirements for finding aggravating factors a precondition to imposing consecutive sentences was waivable [sic] at the sentencing hearing." While not entirely clear, Appellant's argument seems to suggest that the trial court did not consider concurrent sentencing and based the consecutive sentencing solely on the determination that Appellant was a dangerous offender. Appellant also suggests that consecutive sentences are improper because the trial court used aggravating factors without "allowing a jury to determine all the essential facts necessary to the imposition of punishment." The State argues that the record supports the imposition of consecutive sentencing.

---

[3] Effective July 1, 2009, Tennessee Rule of Criminal Procedure 52 was deleted in its entirety, and the plain error language was added to Rule 36(b).

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of the issues. The review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." T.C.A. § 40-35-401(d). "[T]he presumption of correctness 'is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances.'" *State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008) (quoting *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991)). "If . . . the trial court applies inappropriate mitigating and/or enhancement factors or otherwise fails to follow the Sentencing Act, the presumption of correctness fails." *Id.* at 345 (citing *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992)). We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination, a trial court, at the conclusion of the sentencing hearing, first determines the range of sentence and then determines the specific sentence and the appropriate combination of sentencing alternatives by considering: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts regarding sentences for similar offenses, (7) any statements the defendant wishes to make in the defendant's behalf about sentencing; and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-210(a), (b), -103(5); *State v. Williams*, 920 S.W.2d 247, 258 (Tenn. Crim. App. 1995). When imposing the sentence within the appropriate sentencing range for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c).

At the outset we note that Appellant committed the criminal offenses at issue in June of 2006, therefore, the 2005 amendments to the sentencing act apply to our review of his sentencing. The 2005 amendments to the sentencing act made the application of the enhancement factors advisory in nature. *See* T.C.A. § 40-35-114; *State v. Jackie Lynn Gray*, No. M2007-02360-CCA-R3-CD, 2008 WL 2579175, at *5 (Tenn. Crim. App., at Nashville, June 28, 2008), *perm. app. denied*, (Tenn. Dec. 29, 2008); *State v. Troy Sollis*, No. W2007-00688-CCA-R3-CD, 2008 WL 1931688, at *3 (Tenn. Crim. App., at Jackson, May, 2, 2008). In fact, "[T]he 2005 amendments [to the sentencing act] deleted as grounds for appeal a claim that the trial court did not weigh properly the enhancement and mitigating factors." *Carter*, 254 S.W.3d at 344. After a review of the transcript from the sentencing hearing, it is clear that the trial court considered the nature and characteristics of the criminal conduct involved, Appellant's history and background, the mitigating and enhancement factors, and the principles of sentencing. *See id.* at 345-46.

At the sentencing hearing, the trial court heard testimony from Appellant, Mr. Lavarre, and Appellant's mother, Mrs. Weilacker. Mr. Lavarre testified that even though he recovered from his wounds, he was devastated by the cost of his hospital bills. Appellant testified at length regarding his childhood. Appellant informed the court of his accomplishments while incarcerated and also insisted that he was innocent of the crimes involved. Appellant's mother testified that Appellant had intentions to take college courses on-line. The trial court examined Appellant's criminal record, which indicated that Appellant was involved in a second armed robbery only four days after the incident at issue. In the second armed robbery, a victim was shot and seriously wounded.

The trial court reviewed the enhancement and mitigating factors and applied enhancement factor number one, that Appellant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." T.C.A. § 40-35-114(1). The presentence report reflected that Appellant had already been found guilty of aggravated robbery for the second robbery and sentenced to an eleven-year, six-month sentence. The trial court reviewed the mitigating factors and applied factor (13), finding that Appellant participated in numerous programs to better himself while incarcerated and has "no write-ups" in the penitentiary. T.C.A. § 40-35-115(13). The trial court enhanced Appellant's sentence to the middle of the range, ten years for aggravated robbery and twenty years for especially aggravated kidnapping and ordered the sentences to run concurrently.

On appeal, Appellant does not specifically complain about the trial court's application of enhancement factors or mitigating factors. Instead, Appellant argues that he should have been given notice that he was subject to consecutive sentencing. We disagree. The imposition of consecutive sentencing "is not dependent upon any required notice from the

prosecution" to the defendant. *State v. Anthony Reid*, No. E2000-02619-CCA-R3-CD, 2001 WL 818205, at *11 (Tenn. Crim. App., at Knoxville, Jul. 20, 2001), *perm. app. denied*, (Tenn. Dec. 27, 2001).

Under Tennessee Code Annotated section 40-35-115(a), if a defendant is convicted of more than one offense, the trial court shall order the sentences to run either consecutively or concurrently. A trial court may impose consecutive sentencing upon a determination that one or more of the criteria set forth in Tennessee Code Annotated section 40-35-115(b) exists. This section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that:

(1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;

(2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high; . . . .

T.C.A. § 40-35-115(b). When imposing a consecutive sentence, a trial court should also consider general sentencing principles, which include whether or not the length of a sentence is justly deserved in relation to the seriousness of the offense. *See State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). The imposition of consecutive sentencing is in the discretion of the trial court. *See State v. Adams*, 973 S.W.2d 224, 230-31 (Tenn. Crim. App. 1997).

As stated above, this section permits the trial court to impose consecutive sentences if the court finds, among other criteria, that "the defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4). However, before ordering the defendant to serve consecutive sentences on the basis that he is a dangerous offender, the trial court must find that the resulting sentence is reasonably related to the severity of the crimes, necessary to protect the public against further criminal conduct, and

in accord with the general sentencing principles. *See Imfeld*, 70 S.W.3d at 708-09; *State v. Wilkerson*, 905 S.W.2d 933, 938-39 (Tenn. 1995).

Prior to ordering consecutive sentencing, the trial court herein made the following findings with regard to consecutive sentencing:

> It is very true that [Appellant] remained in the vehicle. Of course, this Court tried both cases. We can talk about that gun having - - I believe it is Mr. Selby's fingerprint on it, that was really from the - - it was not - - the weapon was not found until they were stopped after the second robbery. [Appellant] did not go into the store, as I said, so he was not on the end of the trigger, but he was participating as a person who is criminally responsible for the conduct of another. In an aggravated robbery, juveniles going into this store with a weapon, capable of producing serious bodily injury or death. So he had no hesitation about committing a crime in which the risk to human life is high and he had no - - absolutely no regard to human life even though he was sitting in the driver's seat ready to take these kids away from the scene of this robbery.
>
> Now it becomes necessary for this Court to determine whether an extended sentence is necessary to protect the public from further criminal conduct by this defendant. Again, that is a hard decision to make, not from the facts of the case, but strictly based on [Appellant's] age, particularly his age back in 2006. But then you have to determine, look at it - - you know, not only did he commit this act but then shortly thereafter, he and others committed a second aggravated robbery and shooting and it is just like in this particular case, it was totally unnecessary. . . .
>
> Second, the Court must find consecutive sentencing to be reasonably related to the severity of the offenses. It can't get much more serious than these, without a death resulting. So I do believe that an extended sentence is necessary to protect the public from further criminal conduct by [Appellant] and I must find consecutive sentencing to be reasonably related to the severity to all of these offenses.

From the record, we determine that the trial court correctly applied the *Wilkerson* factors on the record. The record does not preponderate against the imposition of consecutive sentencing. Appellant is not entitled to relief on this issue.

*Conclusion*

For the foregoing reasons, the judgments of the trial court are affirmed.


_____
JERRY L. SMITH, JUDGE